# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> ROSETTA GENOMICS, INC., <br><br> Debtor. | Chapter 7 <br><br> Case No. 18-11316 (LSS) <br><br> **Hearing Date: April 21, 2020 at 11:30 a.m. (ET)** <br> **Obj. Deadline: April 13, 2020 at 4:00 p.m. (ET)** |

### MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE, TO APPROVE SETTLEMENT AND FUNDING AGREEMENT WITH SABBY MANAGEMENT, LLC AND AFFILIATES

Don A. Beskrone, the Chapter 7 trustee (the "Trustee") of the estate of the above-captioned debtor (the "Debtor"), by and through his undersigned counsel, hereby moves the Court (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for the approval of a settlement between the Trustee and Sabby Management, LLC, Sabby Capital, LLC, Sabby Healthcare Management Fund, Ltd. and Sabby Volatility Master Fund, Ltd. (collectively, along with their affiliates, "Sabby") (and, together with the Trustee, the "Parties") as set forth in that certain settlement and funding agreement (the "Settlement Agreement"), by and between the Trustee and Sabby, a true and correct copy of which is attached hereto as **Exhibit A**. In support thereof, the Trustee respectfully states as follows:

### JURISDICTION AND VENUE

1.  This Court (the "Bankruptcy Court") has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(a). Venue is proper in this district pursuant to 28 U.S.C. § 1408.

2.  The statutory predicates for the relief requested herein are Federal Rule of Bankruptcy Procedure 9019(a) and section 105 of title 11 of the United States Code (the "Bankruptcy Code").

{01548943;v2 }

## BACKGROUND

3. On May 31, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101, et. seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4. Thereafter, Don A. Beskrone was appointed to serve as the interim chapter 7 trustee in this case. On July 18, 2018, a meeting of creditors was held pursuant to 11 U.S.C. § 341(a) [Docket No. 30], and the Trustee now serves as the permanent trustee of this case pursuant to 11 U.S.C. § 702(d).

5. The Trustee was vested with, among other things, all rights of the Debtor and its estate (i) to prosecute and settle, subject to Bankruptcy Court approval, all claims and causes of action of the Debtor, including, but not limited to, avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) if a purpose would be served, to examine and object to the allowance of any claim that is improper.

6. Sabby Healthcare Management Fund, Ltd. has asserted a general unsecured claim against the Debtor in an amount no less than $2,077,400.00 (the "Sabby Healthcare Claim") arising from the Debtor's alleged Guaranty of obligations under certain Debenture agreements and Sabby Volatility Master Fund, Ltd. has asserted a general unsecured claim against the Debtor in an amount no less than $1,150,500.00 (the "Sabby Volatility Claim," and together with the Sabby Healthcare Claim, the "Sabby Claims") arising from the Debtor's alleged Guaranty of obligations under certain Debenture agreements.

7. The Trustee believes the Debtor and its estate have certain potential claims (the "Potential Actions") related to pre-petition conduct of certain third parties. Contemporaneously

herewith, the Trustee is filing an application (the "Lax Retention Application") to retain Lax & Neville LLP ("LaxNeville") as special counsel to investigate, and, if warranted, pursue the Potential Actions on behalf of the Debtor and its estate. The Trustee has limited resources to fund the investigation of the Potential Actions for the benefit of the estate, and the Trustee seeks to mitigate or eliminate the accrual of administrative expenses associated with the investigation of the Potential Actions. However, Sabby has agreed, subject to the terms of the Settlement Agreement, to fund LaxNeville's fees and expenses incurred for the investigation and prosecution of the Potential Actions, as warranted.

8. Following a series of discussions and exchanges of factual and legal information, after a review and analysis of the positions and/or defenses set forth by each party, and after good faith, arms-length negotiations, the Trustee and Sabby have determined that a settlement and funding arrangement, consistent with the terms set forth in the Settlement Agreement, is appropriate and prudent. Accordingly, by this Motion, the Trustee seeks approval of the Settlement Agreement pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9019(a).

## BASIS FOR RELIEF

9. Rule 9019 of the Federal Rules of Bankruptcy Procedure provides that after notice and a hearing, the Court may approve a proposed settlement or compromise. The decision whether to accept or reject a compromise lies within the sound discretion of the Court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re Resorts International, Inc.,*, 145 B.R.

412, 451 (Bankr. D.N.J. 1990).  Approval of a settlement is appropriate if it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

10. When analyzing settlements, Courts in the Third Circuits generally consider:

- the probability of success in litigation;

- the likely difficulties in collection;

- the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

- the paramount interest of the creditors.

*See Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 253 F.3d 159 (3d Cir. 2002); *In re Martin*, 91 F.3d 389, 392 (3d Cir. 1996).  To approve a settlement under Rule 9019, the Court need only determine that the proposed settlement meets the lowest level of reasonableness.  *In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993).

## RELIEF REQUESTED

11. The Trustee respectfully requests approval of the Settlement Agreement.  The salient terms of the Settlement Agreement are set forth below:[1]

- Settlement.  In settlement of all disputes between the Parties, including any objection(s) the Trustee may assert with respect to the Sabby Claims: (i) Sabby Healthcare Management Fund, Ltd. shall have an allowed general unsecured claim against the Debtor in the amount of $2,077,400.00 (the "Allowed Sabby Healthcare Claim"), (ii) Sabby Volatility Master Fund, Ltd. shall have an allowed general unsecured claim against the Debtor in the amount of $1,150,500.00 (the "Allowed Sabby Volatility Claim" and, together with the Allowed Sabby Healthcare Claim, the "Allowed Sabby Claims"), and (iii) the Parties agree to release and discharge each other from any and all other claims and causes of action, except as otherwise provided in the Settlement Agreement.  For the avoidance of doubt, the Allowed

---

[1] In the event of a conflict between the terms of the Settlement Agreement set forth in this Motion and the Settlement Agreement itself, the Settlement Agreement shall control.

{01548943;v2 }    4

> Sabby Claims are not released or discharged, and shall be deemed and treated as allowed general unsecured claims against the Debtor and its estate.

- <u>Funding of Investigation and Litigation of the Potential Actions</u>.  As additional consideration, Sabby agrees that it shall fund the reasonable fees and expenses of LaxNeville incurred in the investigation, litigation and/or settlement of the Potential Actions consistent and in accordance with the terms of the Lax Retention Application, and any order of the Bankruptcy Court authorizing and approving such retention.

- <u>Sharing of Recoveries</u>.  As additional consideration, Sabby shall be entitled (a) to reimbursement and payment for the actual fees and expenses paid by Sabby to LaxNeville concerning LaxNeville's investigation and/or litigation of the Potential Action with such payment to be made solely from proceeds realized from the litigation and/or settlement of the Potential Actions, <u>plus</u> (b) 50% of the proceeds of litigation and/or settlement of the Potential Actions to the extent such proceeds exceed (the "<u>Excess Proceeds</u>")  the amount of LaxNeville's allowed reasonable fees and expenses.  The Trustee shall be entitled to the remaining 50% of such Excess Proceeds.

- <u>Bankruptcy Court Approval.</u>  The Parties acknowledge that this Agreement is subject in its entirety to Bankruptcy Court approval, and the approval of the Lax Retention Application. Following receipt of a fully signed copy of this Agreement, the Trustee shall file a motion (the "<u>Motion</u>") with the Bankruptcy Court for entry of an order (the "<u>Order</u>") approving the terms of this Agreement.  In the event that the Bankruptcy Court does not approve the Motion by entry of a final order (the "<u>Final Order</u>"), and the Bankruptcy Court does not approve the Lax Retention Application, this Agreement shall be null and void and of no force and effect against either of the Parties.  The Order will be considered to be a Final Order if the Order is not subject to any timely appeal or motion for reconsideration.

- <u>Trustee Release</u>.  Except for the obligations arising under this Agreement, and effective upon Bankruptcy Court approval of (i) this Agreement pursuant to a Final Order, and (ii) the Lax Retention Application, the Trustee, on behalf of the Debtor and the Debtor's estate, releases and discharges Sabby, and its affiliates, officers, directors, members, agents, employees, representatives and attorneys (collectively, the "<u>Sabby Released Parties</u>"), from any and all claims and causes of action, whether known or unknown, of any nature or type, that the Trustee, the Debtor and the Debtor's estate has or may have against the Sabby Released Parties.

- <u>The Sabby Release.</u>  Except for the obligations arising under this Agreement and the Allowed Sabby Claims referenced above, and effective upon Bankruptcy Court approval of (i) this Agreement pursuant to a Final Order, and (ii) the Lax Retention Application, Sabby releases and discharges the Trustee, the Debtor, and the Debtor's estate, and their respective affiliates, officers, directors, members, agents, employees, representatives and attorneys, from any and all claims and causes of

action, whether known or unknown, of any nature or type that Sabby has or may have against the Trustee, the Debtor, and the Debtor's estate.

12. The Trustee respectfully submits that the terms of the Settlement Agreement satisfy the criteria for approval under Rule 9019. First, the Trustee negotiated at arms-length with Sabby. After review and discussion, the Trustee believes that the Sabby Claims are meritorious such that no prejudice would befall the estate in allowing such claims as general unsecured claims. Moreover, the resolution of the Sabby Claims as set forth in the Settlement Agreement will facilitate the investigation, and, if warranted, the pursuit of the Potential Actions (and the recoveries that may be realized therefrom), notwithstanding financial constraints that could otherwise prevent such efforts. In exchange for this compromise, the Trustee and Sabby agreed to fund the foregoing efforts on the terms set forth in the Settlement Agreement (and the Lax Retention Application).

13. The second criterion – the likely difficulties in collection – neither favors nor militates against settlement, as the Trustee is not aware of claims the Debtor's estate holds against Sabby. However, the settlement reflected in the Agreement does not increase any risk of collection, and increases the chances the Trustee will be able to realize a recovery from the Potential Actions for the benefit of the Debtor and its estate.

14. The third criterion also favors settlement because the Settlement Agreement will enable the Trustee to mitigate (if not eliminate) administrative costs and expenses that would otherwise be associated with litigation of the Potential Actions. Indeed, given the funding aspect of the Settlement Agreement, prospective administrative expenses incurred in investigating and/or litigation the Potential Actions will be borne by Sabby in the first instance. Only if proceeds from the Potential Actions are realized will those funds be reimbursed. In the event no such proceeds are derived, the estate will not be saddled with any such obligations.

15. Finally, the creditors of the Debtor and its estate will benefit because the proposed settlement will facilitate the Trustee's pursuit of the Potential Actions and a potential recovery therefrom.

WHEREFORE, for all the foregoing reasons, the Trustee respectfully requests that the Court enter an Order in the form attached hereto approving the Settlement Agreement and granting such other relief as the Court deems just and proper.

Dated:  March 31, 2020

ASHBY & GEDDES, P.A.

 */s/ Benjamin W. Keenan*
Ricardo Palacio (#3765)
Benjamin W. Keenan (#4724)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
Email: bkeenan@ashbygeddes.com

*Counsel for Don A. Beskrone,*
*Chapter 7 Trustee*