**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| ROSETTA GENOMICS, INC., | Case No. 18-11316 (LSS) |
| Debtor. | **Hearing Date: April 22, 2021 at 10:30 a.m. (ET)**<br>**Obj. Deadline: April 8, 2021 at 4:00 p.m. (ET)** |

**MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE,**
**TO AUTHORIZE INTERIM DISTRIBUTION TO SABBY MANAGEMENT, LLC AND**
**AFFILIATES UNDER SETTLEMENT AND FUNDING AGREEMENT**

Don A. Beskrone, the Chapter 7 trustee (the "Trustee") of the estate of the above-captioned

debtor (the "Debtor"), by and through his undersigned counsel, hereby moves the Court (the

"Motion"), pursuant to pursuant to 11 U.S.C. §§ 105 and Federal Rule of Bankruptcy Procedure

3009 for authorization to make an interim distribution to Sabby Management, LLC, Sabby Capital,

LLC, Sabby Healthcare Management Fund, Ltd. and Sabby Volatility Master Fund, Ltd.

(collectively, along with their affiliates, "Sabby") in accordance with that certain settlement and

funding agreement between Sabby and the Trustee (as hereinafter defined, the "Sabby

Agreement").  In support thereof, the Trustee respectfully states as follows:

**JURISDICTION AND VENUE**

1.    This Court (the "Court" or the "Bankruptcy Court") has jurisdiction over the

Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this Motion is a core

proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C.

§ 1408.

2.    The statutory predicates for the relief requested herein are section 105 of title 11 of

the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 3009.

{01673423;v1 }

## BACKGROUND

3.       On May 31, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

4.       Thereafter, Don A. Beskrone was appointed to serve as the interim chapter 7 trustee in this case.  On July 18, 2018, a meeting of creditors was held pursuant to 11 U.S.C. § 341(a) [D.I. 30], and the Trustee now serves as the permanent trustee of this case pursuant to 11 U.S.C. § 702(d).

5.       The Trustee was vested with, among other things, all rights of the Debtor and its estate (i) to prosecute and settle, subject to Bankruptcy Court approval, all claims and causes of action of the Debtor, including, but not limited to, avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) if a purpose would be served, to examine and object to the allowance of any claim that is improper.

**The Potential Actions and the Trustee's Agreement with Sabby with Respect Thereto**

6.       Sabby is a creditor in the Debtor's case.  Sabby Healthcare Management Fund, Ltd. holds a general unsecured claim against the Debtor in the amount of $2,077,400.00 (the "Sabby Healthcare Claim") arising from the Debtor's Guaranty of obligations under certain Debenture agreements.   Sabby Volatility Master Fund, Ltd. holds a general unsecured claim against the Debtor in the amount of $1,150,500.00 (the "Sabby Volatility Claim," and together with the Sabby Healthcare Claim, the "Sabby Claims") arising from the Debtor's Guaranty of obligations under certain Debenture agreements.

7.    In reviewing potential claims, the Trustee became aware of certain claims (the "Potential Actions") held by the Debtor and its estate related to pre-petition conduct of certain third parties.  However, the Trustee had limited resources to pursue such claims.

8.    After good faith, arms-length discussions, the Trustee and Sabby reached an agreement with Sabby to, *inter alia*, (a) settle the Sabby Claims and (b) establish proposed terms under which Sabby would agree to a funding arrangement with respect to the Potential Actions. In connection therewith, the Trustee agreed to seek retention of Lax & Neville LLP ("LaxNeville") as special counsel to investigate, and, if warranted, pursue the Potential Actions on behalf of the Debtor and its estate.

9.    Consistent with the foregoing, the Trustee and Sabby entered a Settlement and Funding Agreement (the "Sabby Agreement") on or about April 20, 2020, subject to Bankruptcy Court approval.  Additionally, the Trustee, subject to Court approval, entered a retainer agreement (the "Engagement Letter") on March 19, 2020 with LaxNeville.

10.    On March 31, 2020, the Trustee filed his *Motion to Approve Settlement and Funding Agreement with Sabby Management, LLC and Affiliates* [D.I. 82] (the "Sabby Motion"). Pursuant to the Sabby Agreement, the Trustee agreed to terms including the following:[1]

- Settlement.    In settlement of all disputes between the Parties, including any objection(s) the Trustee may assert with respect to the Sabby Claims: (i) Sabby Healthcare Management Fund, Ltd. shall have an allowed general unsecured claim against the Debtor in the amount of $2,077,400.00 (the "Allowed Sabby Healthcare Claim"), (ii) Sabby Volatility Master Fund, Ltd. shall have an allowed general unsecured claim against the Debtor in the amount of $1,150,500.00 (the "Allowed Sabby Volatility Claim" and, together with the Allowed Sabby Healthcare Claim, the "Allowed Sabby Claims"), and (iii) the Parties agree to release and discharge each other from any and all other claims and causes of action, except as otherwise provided in the Settlement Agreement.  For the avoidance of doubt, the Allowed

---

[1]  The terms of the Sabby Agreement set forth herein are for descriptive purposes only.  In the event of a conflict between the terms herein and the Sabby Agreement, the Sabby Agreement shall control.

Sabby Claims are not released or discharged, and shall be deemed and treated as allowed general unsecured claims against the Debtor and its estate.

- <u>Funding of Investigation and Litigation of the Potential Actions</u>.  As additional consideration, Sabby agrees that it shall fund the reasonable fees and expenses of LaxNeville incurred in the investigation, litigation and/or settlement of the Potential Actions consistent and in accordance with the terms of the Lax Retention Application, and any order of the Bankruptcy Court authorizing and approving such retention.

- <u>Sharing of Recoveries</u>.  As additional consideration, Sabby shall be entitled (a) to reimbursement and payment for the actual fees and expenses paid by Sabby to LaxNeville concerning LaxNeville's investigation and/or litigation of the Potential Action with such payment to be made solely from proceeds realized from the litigation and/or settlement of the Potential Actions, <u>plus</u> (b) 50% of the proceeds of litigation and/or settlement of the Potential Actions to the extent such proceeds exceed (the "<u>Excess Proceeds</u>")  the amount of LaxNeville's allowed reasonable fees and expenses.  The Trustee shall be entitled to the remaining 50% of such Excess Proceeds.

11.    Also on March 31, 2020, the Trustee filed his *Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014 and Local Rule 2014-1, for Authority to Employ and Retain Lax & Neville LLP As Special Litigation Counsel, Nunc Pro Tunc, To March 20, 2020.* [D.I. 81] (the "<u>Lax Retention Application</u>").

12.    In the Lax Retention Application, the Trustee sought approval for his retention of LaxNeville as special counsel with respect to the Potential Actions pursuant to terms of an the Engagement Letter.  The Engagement Letter provided, *inter alia*, for the payment of LaxNeville's fees and expenses, subject to Bankruptcy Court approval, with payment to be made by Sabby Capital, LLC.

13.    After addressing informal objections raised by the third parties, the Court on January 20, 2021 entered orders approving the Lax Retention Application and the Sabby Agreement. [D.I. 127, 128].

**Trustee's Resolution of Potential Action Against Genoptix, Inc.**

14.    Since entering the Sabby Agreement and retaining LaxNeville as special counsel, the Trustee has investigated and reached a resolution of a Potential Action against Genoptix, Inc. ("Genoptix").

15.    As a result of efforts by the Trustees' attorneys that included extensive investigation of the Debtor's books and records and/or server by LaxNeville, the Trustee learned that during the periods preceding and following the Petition Date, as the case may be, (i) the Debtor made certain transfers to or for the benefit of Genoptix (the "Transfers"), and (ii) Genoptix, RGL and Stone Merger Sub Ltd. entered into that certain *Agreement and Plan of Merger* dated as of February 28, 2018 (as may be amended) regarding, among other things, a proposed merger and corporate reorganization (the "Merger").

16.    Among other things, the Trustee believed that certain or all of the Transfers are subject to avoidance and/or recovery under various sections of Chapter 5 of the Bankruptcy Code, including, without limitation, Sections 544, 547, 548 and 550, and otherwise applicable nonbankruptcy law (the "Chapter 5 Claims") and also that the Trustee, on behalf of the Debtor and its estate, held viable claims against Genoptix regarding, concerning or in connection with the proposed Merger (the "Merger Claims", and together with the Chapter 5 Claims, the "Trustee Claims").

17.    On the other hand, Genoptix asserted certain claims against the Debtor and its estate. Genoptix timely filed proof of claim number 21 (the "Genoptix Claim") against the Debtor asserting a secured claim in a principal amount of not less than $1.2 million pursuant to a loan and security agreement dated December 14, 2017 (as later amended, the "Loan and Security Agreement"). Based upon the Loan and Security Agreement and related documents (collectively,

the "Loan Documents"), Genoptix asserted that it held a properly perfected, first priority lien (the "Genoptix Lien") secured by all of the Debtor's property except for certain excluded collateral (collectively, the "Genoptix Collateral").   Among its Collateral, Genoptix asserted a security interest in two deposit accounts (the "Accounts") held by the Debtor with Bank Leumi USA that held in excess of $400,000.00.

18.    Following a series of discussions and exchanges of factual and legal information between the Trustee and Genoptix, the Trustee reached a settlement with Genoptix (the "Genoptix Settlement").

19.    Pursuant to the Genoptix Settlement, among other things, Trustee agreed to pay $60,000.00 to Genoptix in full and final settlement of the Genoptix Lien, and to allow Genoptix a general unsecured claim in the amount of $1,140,000.00 on account of the remaining amounts of the Genoptix Claim.  In consideration of the Settlement, Genoptix agreed to release any further lien it held or may have held against the Debtor's property, including release of any lien on the Debtor's Accounts.[2]

20.    On November 14, 2020, the Trustee filed a motion pursuant to Fed.R.Bankr.P. 9019 seeking approval of the Genoptix Settlement.  The Court approved the Genoptix Settlement by order entered December 9, 2020. [D.I. 123].

21.    As a result of the Genoptix Settlement, the Trustee received settlement proceeds of $404,145.44 (the "Settlement Proceeds") from turnover of the Debtor's Accounts with Bank Leumi USA in the respective amounts of $327,108.81 and $77,036.63.  The costs associated with the settlement include the $60,000 settlement payment to Genoptix, reimbursement obligations

---

[2] To the extent of any conflict between the description of the Genoptix Settlement herein and the terms of the Genoptix Settlement Agreement, the terms of the Genoptix Settlement Agreement shall govern.

under the Sabby Agreement for LaxNeville's fees and expenses in the amount of $80,135.00 (the "LaxNeville Fees") and fees and expense of Ashby & Geddes in the amount of $39,506.50 (the "Ashby & Geddes Fees").

22.　　Sabby disputes (the "Proceeds Dispute") that the Ashby & Geddes Fees are deductible against its share of the Settlement Proceeds. For purposes of calculating an interim distribution to Sabby, the Trustee and Sabby have agreed that 50% of the Ashby & Geddes Fees (i.e., $19,753.25) shall be deducted from the Settlement Proceeds, with both Sabby's and the Trustee's rights with respect to the Proceeds Dispute fully reserved[3] until a final hearing.  After deducting the LaxNeville Fees, the settlement payment to Genoptix and the agreed portion of Ashby & Geddes' Fees, the remaining proceeds from the Genoptix Settlement are $244,257.19 (the "Excess Proceeds").

23.　　The Trustee seeks authority to make an interim distribution to Sabby with respect to Sabby's share of the Excess Proceeds and the LaxNeville Fees related to the Genoptix Settlement.  Contemporaneously with the filing of this Motion, the Trustee is filing a motion for interim approval of the LaxNeville Fees, subject to a 25% holdback in the interim period that will be payable upon final approval of LaxNeville's Fees.

---

[3] For the avoidance of doubt, the Trustee reserves, *inter alia*, rights with respect to the amount of Settlement Proceeds that fall within the scope of the Sabby Agreement.

## REQUEST FOR RELIEF AND BASIS THEREFOR

24.     By this Motion, the Trustee seeks authorization to make an interim distribution of the proceeds of the Genoptix Settlement as set forth herein.

25.     As discussed below, the Trustee calculates that the Debtor's estate and Sabby are each entitled to $122,128.60 (the "Interim Proceeds Amount") of the Excess Proceeds of the Genoptix Settlement.

26.     Additionally, the Trustee seeks authority to make a distribution to Sabby for the Trustee's reimbursement obligations with respect to the LaxNeville Fees.  The amount of the LaxNeville Fees for which the Trustee is concurrently seeking approval is $80,135.00, subject to a 25% holdback in the interim period.  Accordingly, subject to the terms of the Sabby Agreement, Trustee seeks authority to make an interim distribution to reimburse Sabby $60,101.25 (the "Interim Reimbursement Amount") for the LaxNeville Fees, with the remaining $20,033.75 of the LaxNeville Fees reimbursable to Sabby in accordance with the Sabby Agreement upon final approval of the Court.

27.     Accordingly, the Trustee seeks authority to make an interim distribution to Sabby of the Interim Proceeds Amount and the Interim Reimbursement Amount due to Sabby, for a total of $182,229.85 ($122,128.60 + $60,101.25 = $182,229.85) (the "Interim Distribution Amount").

28.     The Trustee will indefeasibly retain $122,128.59 of the Settlement Proceeds, subject only to adjustment pursuant to resolution of the Proceeds Dispute, as the estate's share of the Genoptix Settlement for the benefit of the Debtor's estate and its creditors.

29.     The Federal Rules of Bankruptcy Procedure countenance prompt distributions in chapter 7 cases, and support the Trustee's requested relief.  Federal Rule of Bankruptcy Procedure Rule 3009 states that "[i]n a chapter 7 case, dividends to creditors shall be paid *as promptly as*

*practicable*." FED. R. BANKR. P. 3009 (emphasis added). In turn, section 105(a) of the Bankruptcy Code permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Accordingly, it is appropriate for the the Court to authorize the Trustee to distribute Interim Distribution Amount pursuant to the Sabby Agreement.

30.     The Trustee calculates the Interim Distribution Amount due to Sabby based on the following amounts:

- Proceeds of Genoptix Settlement: $404,145.44, from Debtor's Accounts with Bank Leumi USA;

- Costs of Settlement:  $179,641.50, consisting of (i) $39,506.50 for Ashby & Geddes fees and expenses as Trustee counsel (ii) $80,135.00 for Lax Neville fees and expenses as special counsel to the Trustee and (iii) $60,000 paid to Genoptix pursuant to the settlement.

- Interim Excess Proceeds Amount: $244,257.19

- Sabby Interim Proceeds Amount:  $122,128.60

- Estate Interim Proceeds Amount: $122,128.59

- Interim Reimbursement of LaxNeville Fees: $60,101.25 (75% of $80,135.00).

- Sabby Interim Distribution Amount: $182,229.85 ($122,128.60 Sabby Proceeds Amount + $60,101.25 Interim Reimbursement Amount = $182,229.85)

WHEREFORE, for all the foregoing reasons, the Trustee respectfully requests that the Court enter an Order in the form attached hereto authorizing the Trustee to make the Interim Distribution to Sabby in accordance with the Sabby Agreement and granting such other relief as the Court deems just and proper.

Dated:  March 25, 2021                    ASHBY & GEDDES, P.A.

                                          _/s/ Benjamin W. Keenan_
                                          Ricardo Palacio (#3765)
                                          Benjamin W. Keenan (#4724)
                                          500 Delaware Avenue, 8th Floor
                                          P.O. Box 1150
                                          Wilmington, Delaware 19899
                                          (302) 654-1888
                                          Email: bkeenan@ashbygeddes.com

                                          *Counsel for Don A. Beskrone,*
                                          *Chapter 7 Trustee*